In the Matter of MORRIS COHEN, an Attorney, Respondent.

First Department, March 10, 1930.

*Isidor J. Kresel* of counsel [*Kenneth M. O'Brien* and *Maurice Wahl* with him on the brief], for the petitioners.

*Leo H. Klugherz* of counsel, for the respondent.

DOWLING, P. J. Respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, First Department, on March 27, 1922.

The petition charges that respondent has been guilty of misconduct as an attorney at law as follows: On or about July 2, 1926, he commenced two actions in the Sixth District Municipal Court, Borough of Brooklyn, one on behalf of Lillian Sass and the other on behalf of Dorothy Sass, for the recovery of $1,000 each for personal injuries sustained by them due to the negligence of the defendant Nellie V. Degrusche in causing a collision with a taxicab in which the plaintiffs were riding. Those actions were commenced without the knowledge, consent or authority of the plaintiffs therein or any one acting for them, the respondent not having been retained as attorney for the plaintiffs or authorized to collect damages for them. These are charges 1 and 2.

The petition further charges that on or about the 17th day of July, 1925, the respondent, as attorney for George Arum, commenced an action in the Second District Municipal Court, Borough of Manhattan, against one Samuel Maslow. Subsequently, on September 17, 1925, the Ocean Accident and Indemnity Corporation, the insurer for Maslow, paid eighty dollars to the respondent as attorney for the plaintiff, by a check payable to " Morris Cohen, as Attorney, and George Arum," whereupon the respondent delivered to the insurer a release purporting to have been signed by George Arum and acknowledged on September 12, 1925, before a notary public. The action was brought without the knowledge, consent or authority of the plaintiff therein; the respondent was never retained as attorney by him and the plaintiff never appeared nor consented to the settlement. The respondent, after receiving the check for eighty dollars, caused the name of George Arum to be indorsed on it by some person other than George Arum and collected and retained the proceeds. Arum never signed or acknowledged the purported release and the respondent delivered such release with knowledge of the fact that Arum had not signed or executed the same and obtained said sum by the making of the aforesaid false and fraudulent representations. This is charge 3.

There was a fourth charge, but that has been withdrawn, so there is no need to set it out here.

By way of answer respondent filed an affidavit showing that two indictments had been found against him growing out of the

situation which was the basis for charge 3 herein, and asked that the proceeding be deferred until the determination of the charges in the Court of General Sessions. These indictments were dismissed.

The matter was referred to a referee, to take testimony in regard to the charges and to report the same with his opinion thereon to this court. The learned referee has duly reported and petitioners now move for such action as this court may deem proper.

In relation to charges 1 and 2 the record discloses that respondent employed one Robert Vincent as part time investigator. This employment was made at the suggestion and on the recommendation of another attorney, one Harrington. In the summer of 1926 Vincent came to respondent, and, respondent testified: " He told me, he said, ' Mr. Cohen, I have here a couple of cases, friends of mine. Mr. Harrington will not bother with them. They are small. Being that you have been very decent and fine with me, I have so much confidence in you I am going to recommend '— ' I recommend them to you.' So relying upon his recommendation that I received from Mr. Harrington I took his word immediately without any further questioning." Respondent issued summonses in three cases, one on behalf of Lillian Sass, another on behalf of Dorothy Sass, and the third on behalf of Police Officer Danahan. The information for these summonses was obtained from some sort of a blotter report in the Danahan case. Respondent then had Vincent make an investigation. Vincent brought him a report in the Danahan matter, and as to the others, respondent testified: " Well, he brought me a report that they don't want to have me as attorney, that they already have a lawyer, and he also told me that they were minors; so I got sore, I said, ' Jesus, if that is how you act towards me here — I took your word for it, you came highly recommended from Mr. Harrington. Now you first tell me that they are minors and that they don't (want) me as the attorney, you caused me to undergo expense, and at the same time make me lose a lot of time.' I said, ' That is no way of doing business,' and I told him I didn't have any more confidence in him. I said, ' Here, I don't want any part of this case, I will discontinue the whole case." The three actions were discontinued by respondent.

It appears that Dorothy and Lillian Sass were injured in a collision in Brooklyn. At the time of the collision, a police officer, Danahan, by name, was riding on the running board of the taxicab in which the Sass sisters were passengers. The injured parties were taken to the hospital. The Sass girls were minors, and on the evening of the accident, their mother retained the firm of Speiser

& Speiser. Vincent knew the police officer, Danahan, and recommended respondent as an attorney to prosecute Danahan's claim. Vincent learned from Danahan about the presence of the two young ladies in the taxicab, and obtained their names at the station house. He then reported to respondent that he had the officer's case and would get the other two — that they were friends of his. Vincent's attempt to secure the Sass cases failed and he reported to respondent, as respondent testified. It appears that Vincent actually obtained a retainer from the police officer.

The referee said: " While respondent may have been influenced and misled by the false misrepresentation of his investigator, Vincent, into bringing actions on behalf of Lillian Sass and Dorothy Sass, nevertheless, I am of the full opinion that the respondent's conduct in accepting the cases of persons who were strangers to him under the circumstances disclosed in this record, and in instituting actions without a retainer from the clients whom he represented and in failing to advise and consult with his clients before instituting actions on their behalf, constitutes on his part a disregard of the responsibilities and duties resting upon a member of the Bar."

In relation to charge 3, the record discloses that in July, 1925, George Arum, David Stein, Joseph Davis, Emanuel Kerber and Louis Duber were in a taxicab on their way to Coney Island, when a collision occurred as a result of which they all sustained slight injuries. After the accident a discussion arose as to bringing an action to recover damages for the injuries sustained. Arum did not want to bother. One Goldstein, in the group, said to him: " I will gave you $2 for your end." Arum thought it was a joke and said, " Go ahead and take it." Goldstein paid Arum the $2 then and there, and Arum accepted it and spent it. In the group was one Samuel Gross, who had known respondent for some years, and who suggested that the latter be retained as attorney. Gross accompanied Dubner, Stein, Kerber and Davis to respondent's office. Arum did not go but Goldstein did. Gross called respondent out of his room and told him that these were the boys about whom he had telephoned. It is clear that Goldstein's real identity was unknown to respondent and he was allowed to believe that Goldstein was Arum. Five suits were brought in the names of the occupants of the taxicab, and they were eventually settled for eighty dollars each. Respondent notified each plaintiff by mail as to the settlement and suggested that they call. In response to the letters Goldstein, whom respondent knew only as " Arum, " called at his office and stated that the others were too busy to call, whereupon respondent delivered to him five releases to be

executed by the parties; Goldstein returned the next day with the releases executed, and without examining them respondent had Goldstein deliver the releases to the insurance company and in exchange Goldstein received the settlement checks, which he delivered to respondent. Respondent requested Goldstein, still known to him as " Arum," to have the checks indorsed by the parties. When Goldstein appeared with the checks indorsed, respondent delivered to him five checks, each for twenty-five dollars, and also gave him fifteen dollars in cash for each client, making a total of two hundred dollars, or fifty per cent of the total settlement. When this was completed and some time after, Goldstein evidently taunted Arum for being a fool in selling his claim. Testimony was adduced to prove that Goldstein had been killed in an accident in 1926. Two disinterested witnesses, Abe Einhorn and Louis Altman, testified to being present when the two dollars were paid Arum, and to hearing the conversation in connection therewith.

The checks supposed to be indorsed by Dubner, Davis, Kerber and Stein were not in fact indorsed by them. The releases were not in fact executed or acknowledged by them. Dubner, Kerber and Stein testified they had authorized Goldstein to do whatever was necessary to get the money. Each of the other four claimants admitted that he knew the cases were settled for eighty dollars, and each admitted receiving checks for twenty-five dollars and fifteen dollars in cash. Edward M. Fuller, the notary public, had no recollection in connection with the acknowledgment of the releases. He admitted his signature and said the individuals were identified to him at the time. He claimed to take 400 signatures a week under Morris Plan requirements.

It appears that respondent was indicted for the alleged forgery and uttering of false release and check as to George Arum, and these indictments were dismissed on the recommendation of the district attorney.

A reasonable view of the circumstances disclosed in this record compels the conclusion that respondent was without knowledge that he was being imposed upon by Goldstein. The group was introduced to him by a man whom he had known for a number of years and there was no reason for him to doubt that they were other than they represented themselves to be. It is not unusual for one of a group to act as representative for the group in dealings and negotiations looking to the settlement of claims.of the nature disclosed in this record, and while the exercise of greater care and caution in dealing with the execution and acknowledgment of the general releases might have disclosed the misrepresentation, it is probable that even the strictest requirement would have been

met without any hesitancy on the part of Goldstein. We think respondent is free of blame in this matter. No guilty knowledge has been proven.

We think that respondent's conduct in connection with the Sass cases indicates a disposition to be not too careful in the practice of commencing actions without proper retainers. His prompt discontinuance of the actions, upon discovering the real situation, in part condones his offense. A consideration of his comparative inexperience as well leads us to exercise clemency in his case. With a censure for respondent's looseness of practice under charges 1 and 2 the proceeding is dismissed.

MERRELL, FINCH, McAVOY and PROSKAUER, JJ., concur.

Respondent censured.